IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBERT D. MIX**, | 1:13-cv-00823-AWI-MJS |
| Plaintiff, | **AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **AUDREY KING, et al.**, | |
| Defendants. | (Docs. 23, 27) |

Plaintiff, a state civil detainee proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. Plaintiff claims that defendants King, Cunningham, and Saloum (collectively "Defendants") failed to protect him from assault by a fellow civil detainee, Mr. Jackson, at the Coalinga State Hospital ("CSH"), in violation of the substantive component of the Due Process Clause. Defendants filed a motion for summary judgment on that claim, contending, *inter alia*, that they were reasonable in their determinations that Mr. Jackson did not pose a threat to other inmates. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On May 6, 2015, the Magistrate Judge filed findings and recommendations, recommending that summary judgment be granted in favor of Defendants. Those findings and recommendations were served on all parties and contained notice to all parties that any objections to the findings and recommendations were to be filed within fourteen days. Plaintiff sought and obtained an extension of time to file objections. On July 16, 2015, Plaintiff mailed

1

objections to the findings and recommendations.[1] *See* Doc. 32. Defendants filed no reply and the time for such a reply to be filed expired fourteen days after Plaintiff filed his objections.

Along with Plaintiff's objection, Plaintiff filed a request to be permitted to file a new opposition to Defendants' motion for summary judgment.

A district court "has discretion, but is not required," to consider evidence and claims raised for the first time in the objection to a magistrate judge's report. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); *accord Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004); *Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002). The district court must, however, "actually exercise its discretion" and not silently accept or deny the new claims. *Jones*, 393 F.3d at 935; *Howell*, 231 F.3d at 622.

Plaintiff's request to file a new opposition explained that the assault left Plaintiff significantly cognitively impaired; nearly eight month after the attack, Plaintiff was taken for a neurological assessment due to the diminished mental functioning observed in him by CSH staff. Doc. 30 at 2. Plaintiff further contends that he was unable to mentally function after the attack for a period of approximately eighteen months. *Id*. The severity of the injury that Plaintiff suffered, the quality of the prior submission compared to the present submission, and the Plaintiff's prior declaration noting that his in-house hospital assessment indicated that he was operating at a 7th grade reading level, all tend to support his claim of prior incapacity. Based on that information and Defendant's non-response, the Court will exercise its discretion to consider the newly submitted evidence. *See Jones*, 393 F.3d at 935 ("[G]iven the circumstances under which this evidence was offered—a pro se plaintiff, ignorant of the law, offering crucial facts as soon as he understood what was necessary to prevent summary judgment against him—it would have been an abuse of discretion for the district court not to consider the evidence.")

---

[1] Generally, the Court applies the mailbox rule to section 1983 filings. *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009). According to the mailbox rule, a prisoner's pleading or other paper is deemed filed at the time he or she delivers it to prison authorities for forwarding to the court clerk. *Id.* at 1106 (quoting *Houston v. Lack*, 487 U.S. 266, 276 (1988)). Because Plaintiff's objections were not due until July 17, 2015, his July 16, 2015 mailing was timely.

As the Magistrate Judge correctly noted in his initial screening order, in order to establish failure to protect liability, "Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights…. Plaintiff cannot state a cognizable claim against them without setting forth specific acts attributable to each that proximately caused a violation of his rights." *Mix v. King*, 2013 WL 3339045, *2 (E.D. Cal. July 2, 2013) (citations omitted). Based on the information previously submitted, the Magistrate Judge correctly determined that Plaintiff had not shown that any of the named defendants were aware that Mr. Jackson was bullying other patients or that he was likely to be violent. *See* Doc. 27 at 5.

In contrast to the evidence considered by the Magistrate Judge, the evidence newly submitted in support of Plaintiff's objections – the declarations by the other patients at CSH – tends to indicate that reports were made directly to or reached all of the named defendants prior to the April 27, 2013, assault by Mr. Jackson. Most of those declarations tend to indicate that CSH staff generally (as opposed to the named defendants) were advised of Mr. Jackson's violence when in custody. Those declarations read, in part, as follows:

> On February 20, 2013, Jackson told [the Patient D'Agostini] if [the D'Agostini] didn't get off the phone and give it to [Jackson] [then Jackson was going to] beat[] [his] ass. [D'Agostini explained that this event was not isolated.] [He] told staff members Angela Igge and Randy and also brought it up during [his wellness and recovery] team [meetings prior to the attack on Plaintiff]….

Declaration of Kenneth D'Agostini, Doc. 31 at 34-35 ("D'Agostini Decl.") at ¶¶ 2-4. Next,

> On the day Jackson attacked [Plaintiff] [¶], Jackson … threatened Mix in the presence of unit staff…. [¶] Just before Jackson left the dayroom to attack Mix he made a comment that he was going to "get him." Everyone, including the staff[,] heard him.

Declaration of Alex Trestrial, Doc. 30 at 36-37 ("Trestrial Decl.") at ¶¶ 7, 9-10. Next,

> In February 2013, March 2013[,] and April 2013, [Patient Flint] was part of the process of informing the Unit Supervisor, Rudy Chavez and Senior Psychiatric Technician Jessica Santiago, about the verbal and physical abuse met out by Patient Jackson against patients on the unit. Most of the physical and verbal altercations occurred … a distance from the Nursing Station and staff…. It was made clear to [Supervisor Chavez and Senior Technician Santiago] that Jackson

3

>was a ticking time bomb and that someone was going to be badly hurt by this patient.[2]
>
>The … meeting with Supervisor Chavez and Senior Technician Santiago [after the attack on Plaintiff] was heated as [Flint and other members of a detainee advisory commission] had warned … Chavez and Santiago and numerous other staff on the unit including at least one of the psychologists of the imminent threat Jackson posed….

Declaration of Scott Flint, Doc. 31 at 30-33 ("Flint Decl.") at ¶¶ 11-12, 18. Next, Patient Consiglio specifically noted that Defendants Cunningham and Saloum had indicated that they were aware prior to the attack on Plaintiff that patients had complaint of about Mr. Jackson:

>On, or about, March 24, 2013, [Mr. Consiglio] wrote to Ms. Audrey King … warning her about the extremely violent behavior of Patient William Jackson. Ms. King did not respond to that letter until June 5, 2013. [¶] [On] April 28, [ - the day after Plaintiff was assaulted – Consiglio] met with Dr. Cunningham and Dr. Saloum … [and] both admitted … that they kn[e]w about [the declarant's] written warnings to … Audrey King regarding Patient Jackson. They also claimed to know about the verbal warnings [Consiglio] made to numerous other staff members concerning Jackson including speaking with Rudy Chavez….

Declaration of Sam Consiglio, Doc. 31 at 36-38 ("Consiglio Decl.") at ¶¶ 7, 10. The Court has reviewed the letter that Mr. Consiglio submitted for Defendant King's review. *See* Doc. 23-6 at 8. That letter does not identify Mr. Jackson by name. Instead, it notes that "there is one big bully on this unit … [who] picks fights with anyone who challenges his bullying." *Id*. In light of the declarations presently before the Court, a dispute exists regarding whether defendants Cunningham and Saloum knew that Mr. Jackson was violent and a threat to other patients prior to the attack on Plaintiff. There is no evidence to suggest that Ms. King was aware of any threat

---

[2] Mr. Flint also notes:
>Supervisor Chavez … informed the [Flint] that [Chavez] had informed unit psychologists about everything that took place at [the meetings with the declarant and other members of a detainee advisory commission] … and [that the abuse and violence that Jackson had exhibited] was being dealt with.

Although "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial," *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citations omitted), the declarant must at least have personal knowledge of the statement that he or she seeks to testify to, *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (citations omitted). That statement – that Chavez told Flint about having made another statement – is inadmissible hearsay. Further, Mr. Flint has no personal knowledge of whether Mr. Chavez actually told anyone else about his complaints. Accordingly, that statement will not be considered for purposes of summary judgment.

to Plaintiff until after he was assaulted. As such, she is entitled to summary judgment in her favor. *See Taylor v. List*, 880 F .2d 1040, 1045 (9th Cir.1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

As the Magistrate Judge also correctly outlined, a civilly detained person has a right to constitutionally adequate conditions of confinement is protected by the substantive component of the Due Process Clause. *Youngberg v. Romeo*, 457 U.S. 307, 312 (1982). He is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," but the Constitution requires only that courts ensure that professional judgment was exercised. Id. at 321–22. The professional judgment standard is an objective one and equates "to that required in ordinary tort cases for a finding of conscious indifference amounting to gross negligence." *Ammons v. Wash. Dep't of Soc. & Health Servs.*, 648 F.3d 1020, 1029 (9th Cir.2011) (citations and emphasis omitted).

In this instance, taking the evidence in the light most favorable to plaintiff, Defendants Cunningham and Saloum had received numerous complaints from at least one patient that Mr. Jackson was dangerous and was bullying other patients in the unit. Defendant Cunningham specifically noted that she was unaware of any incidents of bullying by Mr. Jackson prior to the attack on Plaintiff. That information appears to have been part of her reasoning in determining that Mr. Jackson was not a threat. A jury could determine that, if Defendants did know about Mr. Jackson's bullying of other patients and threatening manner in engaging with other patients, that they acted in conscious indifferent to a significant risk of injury to other patients in failing to separate him and labeling him a "low risk."

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is DENIED as to Defendant Cunningham and Defendant Saloum;
2. Defendants' motion for summary judgment is GRANTED as to Defendant King.

///

///

IT IS SO ORDERED.

Dated: September 29, 2015

_____
SENIOR DISTRICT JUDGE